# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

**TOBIN ENDOWMENT,**

    *Plaintiff*,

**v.**                                                        **No. 5:20-CV-1146-JKP**

**GREAT AMERICAN ASSURANCE CO.,**

    *Defendant*.

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court is *Defendant Great American Assurance Co.'s ("Great American")* *Motion for Summary Judgment* (ECF No. 15) to which Plaintiff Tobin Endowment ("Tobin") has responded (ECF No. 16) and Great American has replied (ECF No. 18). Both sides have submitted additional briefing and evidence.[1] The motion is ripe for ruling. After due consideration, the Court grants the motion.

## I. BACKGROUND

This breach of contract case arises out of an insurance claim submitted by Tobin for hail damage to a commercial building roof it owns which is insured by Great American. ECF No. 15. Tobin alleges Great American breached the parties' insurance agreement stemming from an April 12, 2016 hailstorm. ECF No. 16. Tobin filed suit on August 23, 2020.

Tobin owns property located at 3316 Oakwell Court in San Antonio, Texas. ECF No. 15 at 2. Great American insured the property under a BusinessPro Policy which provided coverage

---

[1] Defendant has filed an Appendix (ECF No. 15-1) in support of its motion. Plaintiff has filed an Appendix (ECF No. 16-1) with its response. In general, the Court will cite to these appendices by ECF Number with appropriate pinpoint cites. Because Defendant's Appendix includes a sequential page number, the Court uses that page number. But for Plaintiff's Appendix it will cite to the ECF page number because the appendix does not include its own sequential page numbers. Furthermore, to make it easier to follow, the Court may identify depositions and declarations by name rather than ECF Number.

from April 5, 2016, to April 5, 2017. *Id*. Tobin's roof was damaged during the April 12, 2016 storm, which was declared a catastrophe by the Commissioner of Insurance.[2] *Id*. *See* ECF No. 15-1 at 297-98 (Commissioner's Bulletin # B-0007-16 dated April 20, 2016). On May 18, 2016, Tobin made a claim for damage to the property through its agent, Catto & Catto. ECF No. 15 ¶ 13. On May 31, 2016, Great American acknowledged the claim. *Id*.; ECF No. 15-1 at 241 (Letter from Great American to Tobin confirming receipt of the claim). On August 31, 2016, Great American sent an actual cash value payment to Tobin regarding the property based on an estimate prepared by an independent adjuster. ECF No. 15-1 at 243. Great American provided Tobin with a copy of the estimate. *Id*. Great American informed Tobin it would retain the recoverable depreciation portion of the payment until the work is completed and Tobin would be required to submit contractor invoices to receive the balance of the payment. *Id*. Tobin never cashed the actual cash value check. Dep. Johnson 41:12-23. Great American never denied the claim and it contends it paid the appropriate amount to repair the damage caused by the storm. *Id*. 94:11-21.

On June 22, 2017, Great American sent correspondence to Tobin which stated "[f]or the 3316 Oakwell Court location -- We have found the *total loss* at this location was $54,974.62." ECF No. 15-1 at 252 (emphasis added). Great American attached a copy of the repair estimate to the letter. *See id*. The letter reflects Great American had numerous discussions with Tobin regarding the roof and retained an engineer to analyze the damage to determine the extent of the necessary repairs. *Id*. Great American determined that the damage could be repaired, and a replacement of the roof was not necessary. *Id*. Great American noted that Tobin's contractor of choice agreed with the decision to repair the damage. *Id*. Great American included a check in the amount of $42,062.02, which held back $7,912.60 as recoverable depreciation and applied Tobin's $5,000

---

[2] Great American insured two properties under the applicable policy. The property at issue is 3316 Oakwell Court. The other property is 302 Ira Lee. There is no dispute regarding the Ira Lee property, and it is not part of this suit.

deductible. *Id*. at 252, 269 (Copy of the Great American Check made payable to Tobin in the amount of $42,062.02). Great American concluded the letter stating "[t]hese checks represent the good faith estimate based on the review of damages and the repairs presented." *Id*. at 255. Tobin cashed the check.[3] Dep. Johnson 169:10-24; ECF No. 15-1 at 280-81. Although Tobin cashed the Great American check, it did not have the repair work done. Dep. Johnson 135:20-23.

On June 23, 2017, Great American sent a closing notice to Tobin's agent, Catto & Catto, informing the agent that Tobin's claim stemming from the April 12, 2016 loss is closed. ECF No. 15-1 at 288-89. Great American's claim or diary notes reflect it closed the Tobin claim on June 21, 2017. *Id*. at 292. The final statement of the 8:28 a.m. entry states "issuing ACV checks and sending a settlement letter with copies of estimates to the insured. With both features the holdback[4] is below 10,000 – closing claim." *Id*. Catto & Catto informed Great American of Tobin's April 12, 2016 loss and Great American notified the agent regarding the closing of the claim. Dep. Johnson 171:2-5.

Bruce Bugg, Tobin's Chairman and Trustee, contends Great American's June 22, 2017 correspondence and check represent Great American's partial payment on its claim. Decl. Bugg ¶ 7. He states: "nothing in this letter indicates that the insurer was refusing to replace the roof." *Id*. He explains that Tobin did not interpret Great American's letter as a rejection of Tobin's position that a full roof replacement was required, but the payment would cover undisputed repairs. *Id*. Bugg points out that Great American's letter did not inform Tobin that Great American had internally closed its file or that any further consideration of its claim would not be permitted. *Id*.

Tobin retained a roofing contractor in August 2019 and hired outside counsel in September 2019 to assist in its effort to obtain additional funds from Great American to replace the damaged

---

[3] The evidence actually reflects that Tobin deposited the check. *See* ECF No. 15-1 at 284-85.

[4] Holdback is recoverable depreciation. Dep. Johnson 173:2.

roof. Bugg's declaration outlines communications between Tobin and Great American regarding the parties' efforts to address the condition of the damaged roof. *Id*. ¶¶ 8-10. On December 20, 2019, Great American responded to Tobin's counsel's email correspondence regarding the current status of the claim. ECF No. 16-1 at 8. Great American stated:

> The critical issue at this juncture is determining whether repair of the roof is possible, or whether it must be replaced. Your [Tobin's] communication to us in late 2019 was the first indication Great American Insurance Company ("GAIC") had that The Tobin Endowment did not believe the roof could be repaired.

*Id*.

On April 13, 2020, Great American sent correspondence to Tobin which stated: "We previously issued final actual cash value payments on June 22, 2017." ECF No. 15-1 at 244. Great American reiterated its position that it retained the services of Charles Jendrusch, an engineer, and he determined a repair was appropriate to resolve the damage to Tobin's roof. *Id*. Great American noted that Mr. Jendrusch confirmed that no work had been performed on the property since the date of loss. *Id*. Bugg interprets Great American's April 13, 2020 letter as a denial of Tobin's claim and the triggering event for its breach of contract claim against Great American. As stated earlier, Tobin filed suit on August 23, 2020.

Great American moves for summary judgment based on the affirmative defense of statute of limitations as modified by the language of the applicable insurance policy.

## II. APPLICABLE LAW

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *accord Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Because jurisdiction in this case is based on diversity of citizenship, the Court must "apply Texas law," including its law regarding statutes of limitations. *Ocwen Loan Servicing, LLC v. Berry*, 852 F.3d 469, 473 (5th Cir. 2017); *accord West v. Conrail*, 481 U.S. 35, 39 n.4 (1987).

### III. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] Fed. R. Civ. P. 56(a). "As to materiality, the substantive law will identify which facts are material" and facts are "material" only if they "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over material facts qualify as "genuine" within the meaning of Rule 56 when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Given the required existence of a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. A claim lacks a genuine dispute for trial when "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When seeking summary judgment on an affirmative defense, such as claims being barred by a statute of limitations, the movant "must establish beyond peradventure" each essential element of the defense. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir.1986); *accord Hagan v. Mazda Motor Co. of Am., Inc.*, 690 F. App'x 242, 243 (5th Cir. 2017) (per curiam) ("Under Texas law, a defendant moving for summary judgment on an affirmative defense must irrefutably establish its elements.").

Once the movant has carried the burden to establish that "claims are time-barred as a matter

---

[5] The summary judgment standard "remains unchanged" despite 2010 amendments to Fed. R. Civ. P. 56 that replaced "issue" with "dispute." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.). Although the standard remains the same, the Court utilizes the amended terminology even when relying on caselaw that predates the amendments

of law," the burden shifts to the non-movant to establish a genuine dispute of material fact on the timeliness of asserted claims. *Dommert v. Raymond James Fin. Servs., Inc.*, No. 1:06-CV- 102, 2009 WL 275440, at *8 (E.D. Tex. Feb. 3, 2009) (adopting recommendation of Mag. J.).

With this shifting burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. When considering a motion for summary judgment, courts view all facts and reasonable inferences drawn from the record "in the light most favorable to the party opposing the motion." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 234 (5th Cir. 2016) (citation omitted).

### IV. LANGUAGE OF THE POLICY

Great American contends Tobin's statute of limitations has run based on the language of the applicable policy. The relevant language is cited below.

### B. Legal Action Against Us

**1.** The **Legal Action Against Us** Commercial Property Condition is replaced by the following, except as provided in B.2. below:

**Legal Action Against Us**

**a.**  Except as provided in paragraph b., no one may bring a legal action against us under this Coverage Part unless:

(1) there has been full compliance with all of the terms of this Coverage Part; and

(2) the action is brought within two years and one day from the date the cause of action first accrues. A cause of action accrues on the date of the initial breach of our contractual duties as alleged in the action.

**b.**  With respect to loss or damage in the State of Texas caused by windstorm or hail in the catastrophe area as defined by the Texas Insurance Code, no one may bring a legal action against us under this Coverage Part unless:

(1) there has been full compliance with all the terms of this Coverage Part; and

(2) the action is brought within the earlier of the following:

(a) two years and one day from the date we accept or reject the claim; or

(b)  three years and one day from the date of the loss or damage that is the subject of the claim.

*See* ECF No. 15-1 at 114.

## V. PARTIES' CONTENTIONS AND ANALYSIS

Because the Texas Insurance Commissioner declared the weather-related event that occurred April 11, 2016, through April 13, 2016, in Bexar County a catastrophe, the determination of the statute of limitations is governed by subsection/subparagraph b of the Texas Changes endorsement to the policy. ECF No. 15-1 at 297-98 (Commissioner's Bulletin # B-0007-16).

Great American contends Tobin's claim is barred under either policy provision above. Great American argues Tobin's limitations period began to run on June 24, 2019, under section B.1.b(2)(a) because it is two years and one day from the date it accepted or rejected the claim. ECF No. 15 ¶ 36. Great American also argues Tobin's limitations period began to run on April 13, 2019, under section B.1.b(2)(b) because it is three years and one day after the date of loss. The Court recognizes that the date of loss and the date a claim accrues are usually not the same date.

Tobin contends the contractual limitations provisions in the applicable policy are void because they create limitations periods that are less than two years. ECF No. 16 at 2-5. Regardless of Tobin's contention that section B.1.b(2)(b) is unenforceable, the Court finds that section B.1.b(2)(a) is enforceable and is dispositive of Tobin's claim in this case. "In cases such as the one at hand, where the insurer paid the claim and closed the case file, the Fifth Circuit has found that the cause of action begins to accrue, at the latest, upon the issuance of a final letter and closing of the claims file." *Chapa v. Allstate Tex. Lloyds*, No. 7:15-CV-30, 2015 WL 3833074, at *4 (S.D. Tex. June 22, 2015) (citing *Castillo v. State Farm Lloyds*, 210 F. App'x 390, 393-95 (5th Cir. 2006). "Any request by the plaintiff to reopen the claim does not toll or extend the limitations

period following the claims decision." *Id*. Even if the insurance company is willing to review additional materials, the limitations period continues to run if the insurer does not change its position. *Id*.

As explained above, a federal court exercising diversity jurisdiction applies state substantive law, including the state's statute of limitations and exceptions. *Beavers v. Metropolitan Life Ins. Co.*, 566 F.3d 436, 439 (5th Cir. 2009). Under Texas law, the statute of limitations for a breach of contract claim is four years from the date the cause of action accrues. Tex. Civ. Prac. & Rem. Code § 16.051. Texas law allows parties to contractually modify the limitations period so long as it is not less than two years. *Id*. § 16.070(a). Texas courts have consistently found such contractual limitations enforceable. *Watson v. Allstate Tex. Lloyd's*, 224 F. App'x 335, 339 (5th Cir. 2007) ("Texas courts routinely enforce such provisions [limiting the statute of limitations] in insurance policies"). Therefore, Tobin's breach of contract claim is subject to the policy's limitation-shortening provision.

The accrual date of a cause of action is governed by state law. *Milton v. Stryker Corp.*, 551 F. App'x 125, 127 (5th Cir. 2014) (applying Texas law on accrual in a diversity case). The limitations period begins "when facts come into existence that authorize a party to seek a judicial remedy." *Provident Life & Acc. Ins. Co. v. Knott*, 128 S.W.3d 211, 221 (Tex. 2003). For a first party insurance breach of contract claim, the action accrues when the insurance company sends a letter to the insured detailing its decision to deny the claim or its decision to pay the claim with payment included which the insured disagrees with, as long as the insurance company never changes its position on the claim. *Castillo v. State Farm Lloyds*, 210 F. App'x 390, 393-395 (5th Cir. 2006) (holding causes of action accrued when insurer sent payment and decision letters and were tolled when insured's counsel requested the claim be reconsidered); *Razo v. State Farm Lloyds*, No. 7:12-CV-352, 2017 WL 6209608, at *2 (S.D. Tex. Dec. 8, 2017) (granting summary

judgment for defendant insurer on limitations grounds and stating limitations period began when "Defendant sent its decision letter to Plaintiff enclosed with payment'); *Chapa v. Allstate Tex. Lloyds*, No. 7:15-CV-30, 2015 WL 3833074, at *5 (S.D. Tex. June 22, 2015) ("If the claim was undervalued, at the very latest, the injury to Plaintiffs began at [the time of the insurer's final payment.]").

Tobin contends Great American's decision letter and payment do not provide an indication of finality, and the statute of limitations did not begin to run until April 13, 2020, when Great American refused to pay for the total cost of replacement of the damaged roof. *See* ECF 16 ¶ 20. However, Texas law does support Tobin's position. Although expressly stating finality in clear terms would be a very wise standard insurance company practice, Texas law does not require an insurer's decision letter to expressly state that the claim is closed. *Castillo v. State Farm Lloyds*, 210 F. App'x 390, 393-94 (5th Cir. 2006). Great American sent its decision letter and payment to Tobin for repair of the roof on June 22, 2017. This was the last payment Great American sent to Tobin for the subject property. Tobin deposited the check, did not make any repairs, and did not contact Great American until August 2019. In addition, there is no evidence that Great American attempted to string Tobin along "without denying or paying a claim." *Murray v. San Jacinto Agency, Inc.* 800 S.W.2d 826, 828 n.2 (Tex. 1990). Although Great American was willing to review additional information submitted by Tobin's counsel in 2019, it never changed its position on the claim after issuing the June 22, 2017 decision letter. *Castillo*, 210 F. App'x at 394. The essence of Tobin's position is that Great American undervalued its claim and paid for a roof repair instead of a full roof replacement. If Tobin disagreed with Great American's decision, it should have taken action based on the payment and decision letter. Great American accepted Tobin's claim by paying it and providing a decision on June 22, 2017. Tobin deposited the check without a complaint until August 2019. Therefore, June 22, 2017, is the date Tobin's claim for breach of

contract began to accrue. Tobin waited almost six months to deposit the June 22, 2017 check. During the period between June 22, 2017, and December 17, 2017, (the day Tobin deposited the check), Great American did not make any additional payments or have any contact with Tobin regarding the claim. Plaintiff was clearly aware that Great American considered the claim resolved. Tobin's claim is barred by section B.1.b(2)(a) of the contractually agreed limitations period.

## VI. CONCLUSION

For the foregoing reasons, the Court **GRANTS** *Great American Assurance Company's Motion for Summary Judgment* (ECF No. 15). By separate document, the Court will enter a Final Judgment dismissing this action.

**IT IS SO ORDERED.**

**SIGNED this 17th day of March 2022.**

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE

10